UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONALD A. DOMINIO, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 09-7348** |
| **ALLSTATE INSURANCE CO.** | **SECTION "L" (3)** |

### FINDINGS OF FACT & CONCLUSIONS OF LAW

**I.   PROCEDURAL HISTORY**

This suit arises out of a claim for insurance benefits under Plaintiff Donald A. Dominio, Sr.'s homeowners policy.  Plaintiff owned a house at 1185 Walnut Street in Slidell, Louisiana.  The property was insured by Defendant Allstate Insurance Company, which issued an Allstate Deluxe Homeowner's Policy with policy limits of $106,000 for the structure and $74,200 for personal property.  On February 17, 2009, a fire caused substantial damage to the house and its contents.  The fire originated in the kitchen and Plaintiff contends that the fire was caused by a pot of grease inadvertently left on the stove while Plaintiff and his family traveled to another property in Mississippi owned by Plaintiff.  After investigating the damage, Allstate was not able to conclusively determine whether the fire was accidental or deliberate.  Therefore, Allstate tendered to Plaintiff the policy limits of $106,000 for structural coverage as well as $5,300 for debris removal.

Allstate contends that after payment of the policy limits for structural damage, but while the personal property claim remained pending, it received information suggesting that Plaintiff intentionally left grease on the stove with the intent to burn down the property and collect on the insurance policy.  Allstate also contends that witnesses corroborate that Plaintiff had a motive for arson, took steps to remove contents from the house, and has in fact confessed to arson.  Allstate

also contends that Plaintiff made false and misleading statements regarding his personal property lists and the condition of the property during an examination under oath ("EUO"). Specifically, Allstate contends that Plaintiff misrepresented his ownership of some items for which he sought coverage, exaggerated the value or existence of other items, and otherwise failed to provide adequate support for his claim.

Plaintiff filed suit in the 22nd Judicial District Court for the Parish of St. Tammany seeking payment under the policy for his personal property. Allstate removed to this Court. The Court granted in part and denied in part a motion for summary judgment filed by Allstate. The Court denied summary judgment regarding coverage on the basis of the alleged material misleading statements, but granted summary judgment that bad faith penalties are unavailable as a matter of law.

There are several issues in this case. First, Plaintiff asserts that he is entitled to payment under the terms of the policy for personal property damaged by the fire. Second, Allstate asserts as an affirmative defense that Plaintiff's personal property losses are not covered because Plaintiff made material misleading statements in connection with his claim. Third, Allstate asserts as an affirmative defense that Plaintiff's personal property losses are not covered because Plaintiff intentionally set the fire.

The Court has carefully considered the testimony of all of the witnesses, the exhibits entered into evidence during the trial, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law.

To the extent that any findings of fact may be construed as a conclusion of law, the Court hereby adopts them as such. To the extent that any conclusions of law constitute a finding of

fact, the Court adopts them as such.

## II. FINDINGS OF FACT

1. Plaintiff Donald A. Dominio, Sr., owned a house located at 1185 Walnut Street in Slidell, Louisiana ("1185 Walnut"). Plaintiff also owned a deer camp located at 50 Centerville Road, Tylertown, Mississippi ("the Mississippi Property"). Plaintiff's house at 1185 Walnut Street was insured by an Allstate Deluxe Homeowner's Policy, # 085762213, issued by Defendant Allstate Insurance Company. The limits of the policy were $106,000 for the dwelling, $5,300 for debris removal, and $74,200 for personal property.

2. Plaintiff's neighbor at 1181 Walnut Street was David Soroe. Plaintiff's neighbors at 1187 Walnut Street were Cindy and Allen Schrimsher. Plaintiff's neighbor at the Mississippi Property was Frank Palmisano. There is substantial animosity between Plaintiff and Mr. Palmisano.

3. Plaintiff's homeowner's policy contains the following provision:

    **Concealment of Fraud**

    We do not cover any loss or occurrence in which an insured person has concealed or misrepresented a material fact or circumstance.

4. Plaintiff's homeowner's policy incorporates the Louisiana Standard Fire Insurance Policy, which contains the following provision:

    **Concealment, fraud**

    This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

5. Plaintiff's homeowner's policy contains the following provision:

    We do not cover loss to the property described in Coverage C–Personal Property

     Protection caused by or consisting of:
     ...
     9. Intentional or criminal acts of, or at the direction of, the insured person, if the loss that occurs:
     a) may be reasonably expected to result from such acts; or
     b) is the intended result of such acts.
     This exclusion applies regardless of whether or not the insured person is actually charged with or convicted of a crime.

6. Plaintiff listed 1185 Walnut Street for sale with real estate agent Stanley Milam between October 9, 2007 and April 9, 2008. Plaintiff had difficulty selling the property because of a crack in the slab that went from the front of the property to the back, because of incomplete repairs of Hurricane Katrina flood damage, and because Plaintiff did not want to reduce his asking price of $109,500.

7. Plaintiff continued to try to sell 1185 Walnut Street thereafter and put a "for sale by owner" sign in front of the house between July 2008 and February 2009.

8. Two to three days before February 17, 2009, Plaintiff told Frank Palmisano, his Mississippi neighbor, that he was having difficulty selling 1185 Walnut Street, but that the insurance company would pay him $106,000 if it burned.

9. On February 17, 2009, Plaintiff went to 1185 Walnut Street to pick up his son, Donald A. Dominio, Jr., his son's fiancee, Michelle Kimball, and their infant son, Donald A. Dominio, III. Plaintiff testified that the four intended to travel to the Mississippi property to stay overnight and clear land. Plaintiff's son and Ms. Kimball had never stayed overnight at the Mississippi property before. Ms. Kimball stated that she and Donald Jr. did not drive themselves to the Mississippi property in their own car because the car did not have air conditioning. Donald. Jr. stated at various times that they did not drive themselves either because the vehicle was too small to transport the baby's necessities or

because the vehicle lacked air conditioning.

10. On February 17, 2009, a fire occurred at 1185 Walnut Street, causing substantial damage and rendering the structure a total loss.

11. The fire was caused by an unattended pot of grease on the left rear burner of the stove in the kitchen. Plaintiff testified that prior to departing 1185 Walnut Street his son was heating two pots of grease, one to cook french fries and one to cook fried chicken. Plaintiff asserted that he turned off one burner, but his son inadvertently left one burner on. Donald Jr. did not remember how a burner was left on.

12. Plaintiff's neighbors David Soroe, Allen Schrimsher, and Cynthia Schrimsher testified that a big-screen television and a kitchen table that they had recently seen in 1185 Walnut Street were not in the house the morning after the fire.

13. Frank Palmisano, Plaintiff's neighbor at the Mississippi property, testified that he saw Plaintiff and his son moving a big-screen television and four to five boxes into a schoolbus on Plaintiff's Mississippi property the day after the fire.

14. Some time after the fire, Plaintiff told Frank Palmisano that he (Plaintiff) had burned down 1185 Walnut Street.

15. Some time after the fire, Plaintiff's son told Frank Palmisano that Plaintiff had burned down 1185 Walnut Street.

16. Allstate investigated the fire and its expert, Bryce Peck concluded that the fire was caused by unattended cooking. Mr. Peck could not conclude whether the unattended cooking was accidental or deliberate.

17. Allstate paid Plaintiff $106,000 (the policy limits) for dwelling damage, $5,300 (the policy limits) for debris removal, $900 as an advance on Additional Living Expenses, and

$500 as an advance on personal property.

18. Allstate paid Michelle Kimball $1,150 under the policy's liability coverage for loss of some of her personal property due to the fire.

19. While Allstate was waiting for Plaintiff to provide information for his claim for personal property under the policy, Allstate was made aware of the possibility that Plaintiff intentionally left the pot of grease untended.

20. Plaintiff is functionally illiterate and prepared his contents list with the assistance of a secretary in the office of his counsel.  Plaintiff supplied all the information contained on the contents list.

21. On the list and a subsequent updated list, Plaintiff claimed coverage for a number of items, including a bedroom furniture set, a refrigerator with bottom freezer, dress clothes which Plaintiff valued at $5,000, shoes and sneakers which Plaintiff valued at $2,000, coats and jackets which Plaintiff valued at $2,000, "antique" deep sea fishing poles and reels which Plaintiff valued at $4,000, a baseball card collection which Plaintiff valued at $1,500, and a comic book collection which Plaintiff valued at $1,000.

22. Plaintiff gave an Examination Under Oath ("EUO") in connection with the handling of his personal property claim.

23. The bedroom furniture set and refrigerator were owned and left behind by a woman named Amanda who Plaintiff let stay in his house for between one and four months in exchange for her paying the electricity bill of approximately $120 per month.  Plaintiff stated at his EUO that he bought the bedroom furniture set and the refrigerator.  Plaintiff did not buy the bedroom furniture set or refrigerator.

24. Plaintiff claimed that his dress clothes were stored in the master bedroom closet.  A

       photograph taken the day after the fire showed none of Plaintiff's dress clothes in the master bedroom closet.

25. Plaintiff claimed coverage for $2,000 worth of shoes and sneakers and $2,000 worth of coats and jackets, but at his EUO admitted that he had only three pairs of shoes, two pairs of sneakers, and two jackets in 1185 Walnut Street at the time of the fire.

26. The credible testimony and evidence establishes that Plaintiff overstated the value of fishing rods and reels by asserting without basis that they were "antique."

27. Plaintiff testified that the comic book and baseball card collections were gifts from Plaintiff's brother to Plaintiff's son. Plaintiff's son testified that he never received any such gifts. The credible testimony and evidence establishes that the comic book and baseball card collections Plaintiff claimed on his property list did not exist.

## III. CONCLUSIONS OF LAW

1. An insurer asserting a defense of arson to a claim under an insurance policy has the burden to prove, by a preponderance of the evidence, that the fire was of an incendiary origin and that an insured was responsible for it. *Sumrall v. Providence Washington Ins. Co.*, 60 So. 2d 68, (1952); *see also Wilson v. State Farm Fire & Cas. Co.*, 178 Fed. App'x 437, 440-41 (5th Cir. 2006).

2. "The insurer bears the burden of proving the defense of intentional misrepresentation in order to avoid coverage. Misrepresentations in a proof of loss given to an insurer will void coverage under the policy only if the insured knowingly and intentionally makes such misrepresentations with the intent to deceive and defraud the insurer. Fraud will never be presumed from acts which may be accounted for on the basis of honesty and good faith." *Williams v. United Fire & Cas. Co.*, 594 So.2d 455 (La. App. 1991); *see*

   *also Bennett v. Allstate Ins. Co.*, 950 F.2d 1102, 1106 (5th Cir. 1992); La. Rev. Stat. § 22:1315 (2009).  Intent may "be inferred from circumstances that create a reasonable assumption that the [insured] was aware of the falsity of his representations."  *Mamco, Inc. v. Am. Emp'rs Ins. Co.*, 736 F.2d 187, 190 (5th Cir. 1984).  "Materiality simply embodies the understanding that the misrepresentation concerns a fact that significantly affects the rights and obligations of the insurer."  *Bennett*, 950 F.2d at 1106 (quoting *Mamco*, 736 F.2d at 190 n.6).  Overvaluation of items and absence of claimed items from the property at the time of the fire are criteria for material misrepresentation, as well as circumstantial evidence of intent.  *See id.*

3. The Court finds that Plaintiff made false statements in his property list and at his EUO with respect to his ownership and the value of the master bedroom furniture, the refrigerator, the deep sea fishing poles, the dress clothing, the shoes, the jackets, and the comic book and baseball card collections.

4. The Court finds that these false statements were material because they would have resulted in Allstate paying more than was owed under the policy.

5. The Court finds that Plaintiff intentionally made these false and misleading statements to obtain a greater payment under his homeowners' policy than he was entitled to.

6. The Court finds and adjudicates that the entire policy is void based on Plaintiff's knowing and intentional material misrepresentation of his personal property and its value.  *See* La. Rev. Stat. § 22:1315; *Bennett*, 950 F.2d at 1107.

## IV.    SUMMARY

Based on the foregoing findings of fact and conclusions of law, the Court finds for Defendant Allstate Insurance Company on all claims.

New Orleans, Louisiana, this 8th day of November, 2010.

    *[signature: Eldon E. Fallon]*
    **UNITED STATES DISTRICT JUDGE**